**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Case No. _____ |
| Plaintiff, | ) ) ) | JURY TRIAL DEMANDED |
| v. | ) ) ) | CLASS ACTION |
| WOLVERINE BANCORP, INC., 5710 EASTMAN AVENUE MIDLAND, MICHIGAN 48640 | ) ) ) ) | |
| RICHARD M. REYNOLDS 5710 EASTMAN AVENUE MIDLAND, MICHIGAN 48640 | ) ) ) ) | |
| ROBERTA N. ARNOLD 5710 EASTMAN AVENUE MIDLAND, MICHIGAN 48640 | ) ) ) ) | |
| ERIC P. BLACKHURST 5710 EASTMAN AVENUE MIDLAND, MICHIGAN 48640 | ) ) ) ) | |
| JAMES W. FISHER 5710 EASTMAN AVENUE MIDLAND, MICHIGAN 48640 | ) ) ) ) | |
| HOWARD I. UNGERLEIDER 5710 EASTMAN AVENUE MIDLAND, MICHIGAN 48640 | ) ) ) ) | |
| DAVID H. DUNN 5710 EASTMAN AVENUE MIDLAND, MICHIGAN 48640 | ) ) ) ) | |
| JOSEPH DONALD SHEETS 5710 EASTMAN AVENUE MIDLAND, MICHIGAN 48640 | ) ) ) ) | |
| JOSEPH M. VANDERKELEN 5710 EASTMAN AVENUE MIDLAND, MICHIGAN 48640 | ) ) ) ) ) | |

```
and                                          )
                                             )
HORIZON BANCORP,                             )
515 FRANKLIN SQUARE,                         )
MICHIGAN CITY, INDIANA 46360                 )
                                             )
                 Defendants.                 )
                                             )
```

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on June 14, 2017 (the "Proposed Transaction"), pursuant to which Wolverine Bancorp Inc. ("Wolverine" or the "Company") will be acquired by Horizon Bancorp ("Horizon").

2.      On June 13, 2017, Wolverine's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Horizon.  Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Wolverine's stockholders, those stockholders will receive $14.00 per share in cash and 1.0152 shares of Horizon common stock for each share of Wolverine common stock.  On June 13, 2017, the last day prior to the public announcement of the Proposed Transaction, the merger consideration represented an implied value of $41.92 per share of Wolverine common stock.

3.      On September 1, 2017, defendants filed a Definitive Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Wolverine common stock.

9.     Defendant Wolverine is a Maryland corporation and maintains its principal executive offices at 5710 Eastman Avenue, Midland, Michigan 48640.  The Company is the bank holding company for Wolverine Bank.  Wolverine's common stock is traded on the NASDAQCM under the ticker symbol "WBKC."

10.     Defendant Richard M. Reynolds ("Reynolds") is a director of Wolverine and Chairman of the Board.  According to the Company's website, Reynolds is a member of the

Company's Audit Committee, the Compensation Committee, and the Nominating and Corporate Governance Committee.

11.     Defendant Roberta N. Arnold ("Arnold") is a director of Wolverine.  According to the Company's website, Arnold is a member of the Company's Compensation Committee and the Nominating and Corporate Governance Committee.

12.     Defendant Eric P. Blackhurst ("Blackhurst") is a director of Wolverine. According to the Company's website, Blackhurst is Chair of the Nominating and Corporate Governance Committee and a member of the Audit Committee.

13.     Defendant David H. Dunn ("Dunn") is a director, President, and Chief Executive Officer ("CEO") of Wolverine.

14.     Defendant James W. Fisher ("Fisher") is a director of Wolverine.  According to the Company's website, Fisher is a member of the Company's Audit Committee and the Compensation Committee.

15.     Defendant Howard I. Ungerleider ("Ungerleider") is a director of Wolverine. According to the Company's website, Ungerleider is a member of the Company's Audit Committee and the Nominating and Corporate Governance Committee.

16.     Defendant Joseph Donald Sheets ("Sheets") is a director of Wolverine.  According to the Company's website, Sheets is Chair of the Audit Committee and a member of the Compensation Committee.

17.     Defendant Joseph M. Vanderkelen ("Vanderkelen") is a director of Wolverine. According to the Company's website, Vanderkelen is the chair of the Compensation Committee and a member of the Nominating and Corporate Governance.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to

herein as the "Individual Defendants."

19.     Defendant Horizon is an Indiana corporation with its principal executive offices located at 515 Franklin Square, Michigan City, Indiana 46360.  Horizon provides banking services in Northern and Central Indiana and Southwestern and Central Michigan through its Indiana state-chartered commercial bank subsidiary, Horizon Bank, and other affiliated entities, including Horizon Risk Management, Inc.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Wolverine (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21.     This action is properly maintainable as a class action. The Class is so numerous that joinder of all members is impracticable.  As of June 13, 2017, there were approximately 2,105,981 shares of Wolverine common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would

create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company*

26.     Wolverine was incorporated in Maryland in 2010 as part of the mutual-to-stock conversion of Wolverine Bank, to become the savings and loan holding company of Wolverine Bank.   Since being incorporated, other than holding the common stock of Wolverine Bank, retaining approximately 50% of the net cash proceeds of the stock conversion offering and making a loan to the employee stock ownership plan of Wolverine Bank, Wolverine has not engaged in any business activities to date, except the repurchase of shares of its outstanding common stock. At June 30, 2017, Wolverine had total assets of $385.9 million, total deposits of $262.7 million, and total stockholders' equity of $62.2 million.

27.     Wolverine Bank was originally chartered in 1933 and it is a wholly-owned subsidiary of Wolverine.  Wolverine Bank is a federally-chartered savings bank headquartered in Midland, Michigan.   It provides financial services primarily to individuals, families, and businesses in the Great Lakes Bay Region of Michigan and throughout all of Michigan.

28.     The Company's business consists primarily of taking deposits from the general public and investing those deposits, together with funds generated from operations and borrowings, in commercial real estate loans including multi-family loans and land loans, one-to-

four family residential mortgage loans, construction loans, and home equity loans and lines of credit and to a lesser extent, commercial non-mortgage loans and consumer loans (consisting primarily of mobile home loans, automobile loans, loans secured by savings deposits and other consumer loans). At December 31, 2016, 78.0% of Wolverine's total loan portfolio was comprised of commercial mortgage loans including multi-family mortgage loans and land loans, and 10.5% of Wolverine's total loan portfolio was comprised of one-to-four family residential mortgage loans.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

29.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

30.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

31.     *First*, the Proxy Statement omits material information regarding Wolverine's and Horizon's financial projections. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32.     The Proxy Statement indicates that the Board provided different iterations of the Company's financial projections to two financial advisors, Keefe, Bruyette & Woods, Inc. ("KBW") and Sheshunoff & Co. Investment Banking, L.P. ("Sheshunoff"). The Proxy Statement, however, only provides stockholders with the projections that Wolverine provided to Sheshunoff, which did not provide a fairness opinion in connection with the Proposed Transaction, in April 2017. It fails to disclose the Company's actual financial projections that were provided to KBW

in June 2017 and used by KBW in its valuation analyses to support its fairness opinion. Although the Proxy Statement indicates certain adjustments that were made to the Company's April 2017 financial projections, those adjustments do not provide stockholders with a clear view and understanding of Wolverine's updated June 2017 projections, which were relied upon by KBW in its analyses.

33.     Also with respect to Wolverine's financial projections, the Proxy Statement fails to disclose important projections that were used by KBW in its Wolverine Discounted Cash Flow Analysis. Specifically, the Proxy Statement states that KBW performed its analysis by using the "estimated excess cash flows that Wolverine could generate over the five-year period from 2017 to 2021 as a standalone company" and deriving implied terminal values by "using two methodologies, one based on tangible book value multiples and the other based on 2022 net income multiples." The Proxy Statement, however, fails to disclose the "excess cash flows" for years 2017 through 2021, as well as the Company's estimated tangible book value for years 2017 through 2022 and net income for year 2022. The disclosure of this information is material to stockholders, because these projections are key inputs in KBW's analysis.

34.     With respect to Horizon's financial projections, the Proxy Statement only provides stockholders with "selected financial projections for Horizon as of September 30, 2017." The Proxy Statement fails to disclose Horizon's long-term financial projections, which are important to stockholders who have to decide whether to accept the mostly-stock merger consideration. For example, KBW performed a Horizon Discounted Cash Flow Analysis by using the "estimated excess cash flows that Horizon could generate over the five-year period from 2017 to 2021 as a standalone company" and deriving implied terminal values by applying a terminal multiple range of 14.3x to 18.3x to Horizon's estimated 2022 net income. The Proxy Statement, however, fails

to disclose Horizon's "excess cash flows" for years 2017 through 2021, and Horizon's estimated net income for years 2017 through 2022.

35.     The Proxy Statement also indicates that, in approving the Proposed Transaction, the Board considered, among other things, "the complementary nature of and potential synergies related to Wolverine's and Horizon's business."  According to the Proxy Statement, the value of those synergies that is expected to result from the Proposed Transaction is not reflected in the Company's financial projections.  The amount of the synergies, moreover, is not disclosed to stockholders in the Proxy Statement.  Stockholders are entitled to understand this information to determine whether they are receiving a fair price for their shares.

36.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Opinion of Wolverine's Financial Advisor;" and (ii) "Certain Financial Projections Provided by Wolverine and Horizon."

37.     *Second*, the Proxy Statement omits material information regarding the financial analyses performed by the Company's financial advisors.  When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38.     With respect to KBW's Wolverine Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the Company's estimated excess cash flows for years 2017 through 2021 that KBW used in its analysis; (ii) the Company's tangible book value for years 2017 through 2022 and the Company's net income for year 2022; (iii) the inputs and assumptions underlying the discount rate range of 12.0% to 16.0% used by KBW; and (iv) the perpetuity growth rates implied

from KBW's analyses.

39.     With respect to KBW's Horizon Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) Horizon's estimated excess cash flows for years 2017 through 2021 that KBW used in its analysis; (ii) Horizon's estimated net income for years 2017 through 2022; (iii) the inputs and assumptions underlying the discount rate range of 10.0% to 13.0% used by KBW; and (iv) the perpetuity growth rates implied from KBW's analysis.

40.     With respect to KBW's Selected Companies Analyses of each of Wolverine and Horizon, the Proxy Statement fails to, but must, disclose the individual multiples and financial metrics for each of the selected companies observed by KBW in its analyses.

41.     Similarly, with respect to KBW's Selected Transactions Analysis, the Proxy Statement fails to, but must, disclose the individual multiples and financial metrics for each of the transactions observed by KBW in its analysis.

42.     The Proxy Statement also indicates that, on April 17, 2017, the Board received a presentation from a second financial advisor, Sheshunoff, that reviewed the terms of indications of interest provided to the Company by Horizon and "Company A," and compared the pricing to hypothetical values of Wolverine as a going concern and in a merger transaction.  According to the Proxy Statement: "Sheshunoff noted that the value of the offers from Horizon and Company A ($85.0 million and $85.8 million, respectively) exceeded Sheshunoff's estimated present value for Wolverine of $61.9 million as a going concern on a discounted cash flow analysis basis, and also exceeded Sheshunoff's estimated value for Wolverine on a market comparison approach of between $60.7 million and $67.1 million."  Further, the Board "considered the information provided by Sheshunoff as part of the board's decision regarding whether to proceed with a merger transaction and, if it were to proceed, with which party (Horizon or Company A)."  The Proxy

Statement, however, fails to provide a fair summary of Sheshunoff's analyses, despite the fact that they were relied upon by the Board and touted to stockholders in the Proxy Statement.

43.     Finally, the Proxy Statement indicates that, in determining whether to proceed with Horizon's lower offer or Company A's higher offer, the Board "reviewed comparisons of Company A's common stock to . . . two peer groups of publicly-traded community financial institutions, on an earnings and tangible book value basis."  The Proxy Statement, however, fails to disclose a fair summary of the peer-groups that the Board reviewed.

44.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Background of the Merger;" (ii) "Opinion of Wolverine's Financial Advisor;" and (iii) "Certain Financial Projections Provided by Wolverine and Horizon."

45.     *Third*, the Proxy Statement fails to disclose material information relating the background leading to the Proposed Transaction.

46.     The Proxy Statement indicates that the Company entered into several non-disclosure agreements with several parties that were interested in acquiring the Company.  The Proxy Statement, however, fails to disclose whether those non-disclosure agreements contained standstill and/or "don't ask, don't waive" provisions that are preventing those counterparties from submitting topping bids to acquire the Company or requesting a waiver of standstill provisions. This information is particularly important in light of the fact that the Board determined to proceed with a transaction with Horizon, despite the fact that Company A offered a higher implied merger consideration.  Specifically, based on closing prices on May 30, 2017, Horizon's proposal had an implied value of $39.60 per share of Wolverine common stock, while Company A's proposal had an implied value of $45.38 per share of Wolverine common stock.  Without this information, the

Company's stockholders could be misled into believing that interested parties, including Company A, are currently free to make a superior offer to acquire the Company.

47.     The omission of this material information renders the "Background of the Merger" section of the Proxy Statement false and misleading.

48.     *Fourth*, the Proxy Statement fails to disclose material information relating to potential conflicts of interest of the Company's executive officers.

49.     The Proxy Statement indicates that, in connection with the Proposed Transaction, Individual Defendant Dunn (the Company's President and CEO) and Rick A. Rosinski ("Rosinski") (the Company's Chief Operating Officer, Treasurer, and Secretary) entered into mutual termination of employment agreements that quantify and settle the benefits owed to the executives under their employment agreements, and entitle Dunn and Rosinski to a lump-sum cash payment of $1,037,218 and $443,830, respectively.   Also in connection with the Proposed Transaction, Dunn and Rosinski entered into an employment agreement with Horizon Bank, whereby Dunn will serve as Regional Market President – Great Lakes Bay Region Michigan of Horizon Bank and Rosinski will serve as Vice President – Large Account Relationship Manager of Horizon Bank.

50.     The Proxy Statement, however, fails to disclose any information relating to the timing and nature of all communications regarding future employment of the Company's officers, including who participated in all such communications.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's

stockholders.

51.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of Certain Directors and Officers of Wolverine in the Merger."

52.     *Fifth*, the Proxy Statement fails to disclose material information relating to potential conflicts of interest of the Company's financial advisors.

53.     The Proxy Statement indicates that "KBW had previously served as financial advisor to Wolverine in connection with Wolverine Bank's mutual-to-stock conversion and related stock offering by Wolverine that was completed in 2011."  The Proxy Statement, however, fails to disclose the amount of compensation that KBW earned in connection with that engagement.

54.     Further, the Proxy Statement fails to disclose the amount of fees, if any, the Company or its affiliates has paid to Sheshunoff in the past three years, and whether Sheshunoff has provided any services to the Company, Horizon, or their affiliates in the past three years.

55.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

56.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Opinion of Wolverine's Financial Advisor."

57.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Wolverine's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Wolverine**

58.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Wolverine is liable as the issuer of these statements.

60.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

61.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

62.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

63.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

64.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

65.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and Horizon**

66.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67.     The Individual Defendants and Horizon acted as controlling persons of Wolverine within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Wolverine and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

68.     Each of the Individual Defendants and Horizon was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Proxy Statement.

70.     Horizon also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

71.     By virtue of the foregoing, the Individual Defendants and Horizon violated Section 20(a) of the 1934 Act.

72.     As set forth above, the Individual Defendants and Horizon had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 5, 2017

**LEVI & KORSINSKY LLP**

By:  _/s/ Donald J. Enright_

**OF COUNSEL:**

Donald J. Enright (Bar No. 13551)
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: denright@zlk.com
         etripodi@zlk.com

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
T: (302) 295-5310
F: (302) 654-7530
Email: bdl@rl-legal.com
         gms@rl-legal.com

_Attorneys for Plaintiff_

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
T: (484) 324-6800
F: (484) 631-1305
Email: rmaniskas@rmclasslaw.com

_Attorneys for Plaintiff_

## CERTIFICATION OF PLAINTIFF

I, Paul Parshall ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1.      Plaintiff has reviewed the complaint and authorizes its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary.  I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4.      Plaintiff's purchase and sale transactions in the Wolverine Bancorp, Inc. (NasdaqCM: WBKC) security that is the subject of this action during the class period is/are as follows:

### PURCHASES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 1/14/15 | 45 | $24.03 |
|  |  |  |
|  |  |  |
|  |  |  |

### SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Please list additional transactions on separate sheet of paper, if necessary.*

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.      During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of ___, 2017.

PAUL PARSHALL

2